28 F.3d 1520
 Richard KATZ, Esq., As Guardian Ad Litem for S.S., a Minor,
Plaintiff-Appellant,
v.
CHILDREN'S HOSPITAL OF ORANGE COUNTY; American Red Cross;
Doe Blood Bank, and Does 1 through 100,
Defendants-Appellees.
 No. 92-56393.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided June 29, 1994.
As Amended July 26, 1994.
 
 Martin M. Berman, Berman, Katz & Weiss, Encino, CA, for plaintiff-appellant.
 Richard L. Hasen, Horvitz & Levy, Encino, CA, and Larry T. Pleiss, Madory, Booth, Zell & Pleiss, Tustin, CA, for defendant-appellee Children's Hosp. of Orange County.
 Laurie A. Plessala, Arnold & Porter, Los Angeles, CA for defendant-appellee American Red Cross.
 Appeal from the United States District Court for the Central District of California.
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 In this case, we must decide a difficult question: under California law, at what point does a cause of action accrue, and what is the appropriate limitations period, for a medical malpractice action brought by a minor infected with the HIV virus?
 
 Factual and Procedural Background
 
 2
 In December 1983, at the age of four years and three months, the appellant in this case, known as minor "S.S." ("Appellant"), received a blood transfusion at the Children's Hospital of Orange County ("Children's Hospital"). The blood had been supplied by the American Red Cross ("the Red Cross"). On or about August 18, 1988, when Appellant was almost nine years old, a blood test revealed that he had been infected with the HIV virus. The record in this case contains no other details concerning Appellant's medical history. On June 25, 1991, two years and ten months later, Appellant served a notice of intention to institute a suit for "medical malpractice" against the Red Cross pursuant to California Code of Civil Procedure section 364.[1] A complaint was filed in the Superior Court of Orange County on October 7, 1991, naming as defendants the Red Cross, Children's Hospital, and several as of yet unnamed individuals and one unnamed blood bank ("Appellees"). The complaint alleged that Children's Hospital, acting through several unnamed employees, committed medical malpractice by negligently transfusing Appellant with HIV-tainted blood.[2] Appellant also maintained that the Red Cross and Children's Hospital, as well as the unnamed blood bank and several unnamed individual defendants, acted negligently by failing to employ adequate screening procedures for detecting the HIV virus from blood donors.
 
 
 3
 Appellees then removed the case to federal court based upon the presence of the Red Cross as a party. See American Nat'l Red Cross v. S.G. & A.E., --- U.S. ----, ----, 112 S.Ct. 2465, 2567, 120 L.Ed.2d 201 (1992); 36 U.S.C. Sec. 2 (1988). In January 1992, the Red Cross filed a motion for summary judgment, contending that Appellant's action was barred by the statute of limitations contained in California Code of Civil Procedure section 340.5.[3] Children's Hospital filed a motion to dismiss for failure to state a claim on the same basis and subsequently joined in Red Cross's summary judgment motion.
 
 
 4
 After ordering supplemental briefing, the district court, on September 25, 1992, granted Appellees' motion for summary judgment.[4] Noting that the plain language of section 340.5 provides that a cause of action for professional negligence against a health care provider brought by a minor "shall be commenced within three years from the date of the alleged wrongful act," and that the alleged wrongful act, the transfusion, occurred in 1983, the court concluded that "[p]laintiff served his notice of intent to sue long after the statute of limitations had expired."[5] The district court further held inapplicable the provision of section 340.5 that tolls the statute based upon the presence of a "foreign body, which has no therapeutic or diagnostic purpose or effect." Assuming arguendo the HIV virus so qualified, the court held that the provision "only tolls the statute for one year" from discovery of the foreign body. Consequently, the district court concluded that "plaintiff's complaint was filed beyond the statutory period" and was "barred as a matter of law." Appellant filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 Discussion
 I. Contentions of the Parties
 
 5
 Appellant argues that the district court erred for two reasons. First, he contends that the California courts, having concluded section 340.5's "wrongful act" point of accrual for a minor's medical malpractice action violates equal protection principles, would read the statute to require a minor to file a medical malpractice action within three years from the date of the discovery of the negligent cause of an injury. Because the date of discovery of the HIV infection in this case, August 18, 1988, was within three years of the filing of the section 364 notice, Appellant contends that his complaint was timely. Second, he maintains that the district court erred in its application of the "foreign body" exception because California law makes clear that, when this tolling provision applies to a minor, the appropriate limitations period is not reduced to one year, as found by the district court, but remains three years. In addition, he contends that the HIV virus is a "foreign body" within the meaning of the statute.
 
 
 6
 The appellees disagree with Appellant's contentions, but each for a different reason. Red Cross argues that the district court correctly applied section 340.5 as written. In the alternative, Red Cross asserts that, if this reading of the statute raises constitutional difficulties, then the statute must be construed so that adults and minors are subject to the same limitation and accrual periods. Because an adult's action would have been barred one year after "discovery" of the injury's negligent cause, Red Cross contends that the statute ran in August 1989, one year after the blood test revealed Appellant's infection with the HIV virus.
 
 
 7
 Children's Hospital offers yet a third view of how the statute should be construed. It agrees with Appellant that the California courts have held that the "wrongful act" accrual date for minors violates equal protection principles, but maintains that the correct accrual date is not the date at which the asserted negligence was discovered, but instead is the date on which the injury caused by the wrongful act first was manifested. Taking the "injury" date as the appropriate accrual event, Children's Hospital contends that summary judgment must be upheld because the record contains no evidence concerning when an injury that stemmed from the HIV infection (as distinguished from the point at which HIV was identified as the cause of such an injury) first was detected.[6]
 
 
 8
 We agree with appellee Children's Hospital, for the reasons discussed below, that the California courts, having already determined that the "wrongful act" point of accrual for minors violates equal protection principles, would hold that an "injury" point of accrual should apply instead. We conclude, however, that the district court's grant of summary judgment cannot be upheld.
 
 
 9
 II. The California Courts Would Hold that Section 340.5
 
 
 10
 Requires a Minor to Bring a Claim within Three
 
 
 11
 Years from "Injury"
 
 A. Section 340.5
 
 12
 As revised in 1975, section 340.5 of the California Code of Civil Procedure provides:
 
 
 13
 In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence.
 
 
 14
 Cal.Civ.Proc.Code Sec. 340.5 (Deering 1991) (numbering of sentences added).
 
 
 15
 Prior to section 340.5's enactment, medical malpractice actions were governed by the one-year limitation period set forth in section 340(3). See Larcher v. Wanless, 18 Cal.3d 646, 135 Cal.Rptr. 75, 79, 557 P.2d 507, 511 (1976); Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908, 910 (1936); Cal.Civ.Proc.Code Sec. 340(3) (Deering 1991). Although section 340(3) contains no triggering event, the California courts read into it the "common-law discovery rule"--that " '[i]n a suit for malpractice the statute of limitations commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it.' " Larcher, 135 Cal.Rptr. at 79, 557 P.2d at 511 (quoting Whitfield v. Roth, 10 Cal.3d 874, 112 Cal.Rptr. 540, 548, 519 P.2d 588, 596 (1974)); see also Sanchez v. South Hoover Hosp., 18 Cal.3d 93, 132 Cal.Rptr. 657, 660, 553 P.2d 1129, 1132 (1976). Medical malpractice claims brought by minors also were subject to the one-year limitation period running from discovery. See, e.g., Wozniak v. Peninsula Hosp., 1 Cal.App.3d 716, 722-23, 82 Cal.Rptr. 84 (1969). Minors received, however, the additional protection of having the statute tolled during their minority. See Cal.Civ.Proc.Code Sec. 352 (Deering 1991). See generally Kite v. Campbell, 142 Cal.App.3d 793, 802, 191 Cal.Rptr. 363 (1983) (discussing the pre-section 340.5 regime), overruled on other grounds, Young v. Haines, 41 Cal.3d 883, 226 Cal.Rptr. 547, 718 P.2d 909 (1986).
 
 
 16
 As the California courts observed, the difficulty of the discovery rule was that "commencement of the limitation period [might be postponed] indefinitely, i.e., as long as the plaintiff [lacked the necessary] knowledge." Larcher, 135 Cal.Rptr. at 79, 557 P.2d at 511; accord Ferguson v. Dragul, 187 Cal.App.3d 702, 706, 232 Cal.Rptr. 79 (1986) (citing Sanchez, 132 Cal.Rptr. at 660, 553 P.2d at 1132). It further was perceived that "the resulting 'long tail' claims made it difficult to set premiums at an appropriate level" and thereby fuelled a "malpractice insurance crisis." Young v. Haines, 41 Cal.3d 883, 226 Cal.Rptr. 547, 552, 556-57, 718 P.2d 909, 915, 918-19 (1986) (citing commentators).
 
 
 17
 The enactment of section 340.5 in 1970, and its further amendment in 1975 as part of the Medical Injury Compensation Reform Act (MICRA), responded to these concerns by "ret[aining] the substance of the common law discovery rule, while modifying its 'open-ended' operation." Sanchez, 132 Cal.Rptr. at 661, 553 P.2d at 1133. It did this by requiring adults to meet two distinct limitation periods.[7] First, the statute retained from the judicial interpretations of its predecessor an "inside" limitation period of one year running from the date of discovery of the injury. Discovery is defined by the California courts as the point at which " 'the plaintiff is aware of both the physical manifestation of the injury and [suspects its] negligent cause.' " Dolan v. Borelli, 13 Cal.App.4th 816, 823, 16 Cal.Rptr.2d 714 (1993) (quoting Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 661, 751 P.2d 923, 927 (1988) (emphasis both added and omitted)).
 
 
 18
 Second, the statute established an "outside limit," Young, 226 Cal.Rptr. at 552, 718 P.2d at 914, of three years that runs from the date of injury. Injury is defined by the California courts as the point at which " 'appreciable harm [from the negligence] was first manifested.' " E.g., Marriage & Family Center v. Superior Ct., 228 Cal.App.3d 1647, 1652, 279 Cal.Rptr. 475 (1991) (quoting Brown v. Bleiberg, 32 Cal.3d 426, 186 Cal.Rptr. 228, 233 n. 8, 651 P.2d 815, 820 n. 8 (1982)). To be "manifested," the damage from the negligence must "ha[ve] made itself known in some outward fashion." Id. The injury accrual date differs from discovery in that the former does not require the plaintiff to have suspected the negligent cause of the harm experienced. " 'This means that if a plaintiff does not "discover" the negligent cause of her injury until more than three years after she first experiences harm from the injury, she will not be able to bring a malpractice action.' " Dolan, 13 Cal.App.4th at 825, 16 Cal.Rptr.2d 714 (quoting Ashworth v. Memorial Hosp., 206 Cal.App.3d 1046, 1054-55, 254 Cal.Rptr. 104 (1988)).
 
 
 19
 Section 340.5 initially did not apply to minors. See Kite, 142 Cal.App.3d at 802, 191 Cal.Rptr. 363. In the 1975 revision of the statute, however, the California legislature added specific provisions that were "intended to abrogate the general rule which toll[ed] the running of limitation statutes during a person's minority." Ferguson, 187 Cal.App.3d at 706, 232 Cal.Rptr. 79. In contrast to adults, minors do not need to meet two separate limitation periods; instead, they are subject to only one three-year limitation period. In addition, minors who suffer a wrongful act before the age of six receive the added protection of being able to bring an action, at a minimum, at any point prior to their eighth birthday, see Cal.Civ.Proc.Code Sec. 340.5 (third sentence). Furthermore, minors can take advantage of not only the adult tolling provisions, see Young, 226 Cal.Rptr. at 554-57, 718 P.2d at 916-19, but also an additional tolling provision that applies solely to their actions, see Cal.Civ.Proc.Code Sec. 340.5 (fourth sentence).
 
 
 20
 On its face, however, the statute does not work always to the benefit of minors. Although the adult "statute of limitations requires commencement of an action with three years after the date of the injury ... the three-year period prescribed in the minor statute of limitations begins to run on the date of the alleged wrongful act." Steketee v. Lintz, Williams & Rothberg, 38 Cal.3d 46, 210 Cal.Rptr. 781, 784, 694 P.2d 1153, 1156 (1985) (emphasis in original). Moreover, " '[w]rongful act' and 'injury' are not synonymous." Id. "The date of injury could be much later than the date of the wrongful act where the plaintiff suffers no physical harm until months or years after the wrongful act." Id. 210 Cal.Rptr. at 785, 694 P.2d at 1157. Consequently, although minors benefit relative to adults in cases in which injury, wrongful act, and discovery occur contemporaneously, for harms that have latency periods, and which are not subject to the tolling provisions contained in either section 340.5's second or fourth sentences, a minor's three-year limitations period running from discovery might expire long before the adult's three-year period running from injury even begins. In the case of the HIV virus, this is a distinct possibility. Cf. Seitzinger v. American Red Cross, 1991 WL 88023 at * 3, 1991 U.S. Dist. LEXIS 6860 at * 9 (E.D.Pa. May 21, 1991) (noting that, because of "the indefinite and protracted incubation period between infection and the manifestation of symptoms, a victim may discover [that he has AIDS] only after the [applicable] statute of limitations has lapsed").
 
 
 21
 B. The California Courts would not Apply the "Wrongful Act"
 
 Point of Accrual
 1.
 
 22
 Based on the possibility, described above, that minors might be disadvantaged vis-a-vis adults by the "wrongful act" accrual date, the California courts noted on several occasions that section 340.5's "wrongful act" point of accrual raises significant equal protection problems. In Kite v. Campbell, 142 Cal.App.3d 793, 191 Cal.Rptr. 363 (1983), a California appellate court read into the minor's three-year limitations period the common-law rule that "tolled commencement of this period until the plaintiff either discovered his injury and its negligent cause or could have discovered the injury and its cause by exercising reasonable diligence." Id. at 802-03, 191 Cal.Rptr. 363. To hold otherwise, the court asserted, would result in a disfavoring of minors that "would violate the right of minor victims of malpractice to equal protection under the law." Id. at 802, 191 Cal.Rptr. 363.
 
 
 23
 Kite subsequently was overruled by the California Supreme Court in Young v. Haines, 41 Cal.3d 883, 226 Cal.Rptr. 547, 718 P.2d 909 (1986), which held that the legislature in enacting section 340.5 intended to abrogate all common-law tolling rules except those expressly incorporated into the statute, see id. 226 Cal.Rptr. at 554, 718 P.2d at 916. However, to avoid the very equal protection problem identified in Kite, the Young court held that the tolling provisions in section 340.5's second sentence must apply to minors. The Court reasoned that to deny minors their benefit would result in "discrimination against the most vulnerable subclass of malpractice plaintiffs" that "bears no apparent rational relation to any legislative goal embodied in section 340.5. It would accordingly present significant constitutional problems." Id. 226 Cal.Rptr. at 555, 718 P.2d at 917.
 
 
 24
 The Court in Young, as in a previous decision, see Steketee, 210 Cal.Rptr. at 785 n. 4, 694 P.2d at 1157 n. 4, expressly did not reach the constitutional question raised by the inconsistency "between the 'injury' starting date of the general [limitation] provisions and the 'wrongful act' starting date of the minor provisions." Young, 226 Cal.Rptr. at 555 n. 10, 718 P.2d at 917 n. 10. This question, however, was confronted squarely by a California appellate court in Torres v. County of Los Angeles, 209 Cal.App.3d 325, 257 Cal.Rptr. 211 (1989) (review denied).
 
 
 25
 Torres considered whether California Government Code section 911.2, which required claims against public entities to be brought within 100 days after a cause of action accrues, see Cal.Gov't Code Sec. 911.2 (Deering 1982),[8] operated to bar a claim brought by a minor who allegedly suffered severe brain damage as a result of a county hospital's negligence both during his mother's pregnancy and subsequent to his birth. Because the accrual date for section 911.2 is the date upon which the cause of action would be deemed to have accrued if section 911.2 did not apply, see Cal.Gov't Code Sec. 901 (Deering 1982 & Supp.1994), the relevant accrual date was drawn from section 340.5, see Torres, 209 Cal.App.3d at 332, 257 Cal.Rptr. 211.
 
 
 26
 The court noted initially that "although the statutory limitations period under section 340.5 is more generous to minors, the statutory accrual date, when the wrongful act precedes the injury, may in some circumstances be more strict than the accrual date accorded to adults." Id. at 333-34, 257 Cal.Rptr. 211 (emphasis in original). Relying upon the Young Court's statement that a legislative classification " ' "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike," ' " id. at 334, 257 Cal.Rptr. 211 (quoting Young, 226 Cal.Rptr. at 556, 718 P.2d at 918 (quoting Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 253-54, 30 L.Ed.2d 225 (1971))), the Torres court similarly reasoned that discrimination against minors was not related rationally to any ascertainable legislative goal, see id. Accordingly, the court concluded that:
 
 
 27
 By defining the actions of adults and minors to accrue differently, section 340.5 violates the minors' right to the law's equal protection. The adults' cause of action may accrue either from the "date of injury" or from the time "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury," whichever occurs earlier. The minors' cause of action, by contrast, accrues from the date of the "wrongful act" rather than the injury, and the statute contains no comparable provision permitting accrual when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury.
 
 
 28
 Id. at 334, 257 Cal.Rptr. 211.
 
 
 29
 Finally, drawing upon prior cases interpreting section 911.2, the Torres court concluded that the discovery rule should govern medical malpractice claims brought by minors under that statute. See id. at 335, 257 Cal.Rptr. 211.
 
 2.
 
 30
 Appellant contends that, in light of Torres, the California courts would not rely upon the "wrongful act" accrual provision. Appellant does not ask this court to engage in its own equal protection analysis; rather, Appellant maintains that the sole issue this court faces is how the California courts would interpret section 340.5, and that Torres supplies the answer. By contrast, Red Cross maintains that Torres only decided that section 340.5's accrual provisions were unconstitutional as applied to section 911.2. Based on this assumption, Red Cross maintains that Appellant must mount his own equal protection challenge. Red Cross argues further than such a challenge would fail because, on the facts of this case, if Appellant were an adult, his claim would have been barred by operation of the one-year limitation provision that runs from "discovery."
 
 
 31
 We agree with Appellant that Torres must be read as facially invalidating the "wrongful act" accrual period for minors contained in section 340.5. It is true that the court stated that the use of section 340.5's accrual periods penalized minors "insofar as Government Code section 901 computes section 911.2 time limits from [section 340.5]." Torres, 209 Cal.App.3d at 334, 257 Cal.Rptr. 211. Based on this statement, and the observation that section 911.2 provides adults and minors with the same 100 day limitation period, Red Cross contends that Torres rested on a conclusion that section 911.2 "in all cases discriminated against minors" because "they had the same limitation period as adults, but it started running earlier." Brief for Appellee Red Cross at 11 (emphasis added). Accordingly, Red Cross claims Torres 's reasoning reaches no farther than section 911.2
 
 
 32
 However, the Torres court's analysis was not based on whether any actual discrimination that existed in that case, but on the hypothetical scenario that "[w]hen harm occurs prenatally or in childbirth, the 'wrongful act' may only be revealed to have caused an 'injury' to the minor months or even years later." Torres, 209 Cal.App.3d at 334, 257 Cal.Rptr. 211 (emphasis added). It appeared decisive that the minor's accrual date "may in some circumstances be more strict than the accrual date accorded to adults." Id. at 333-34, 257 Cal.Rptr. 211 (emphasis added). Indeed, the Torres court could not have required actual discrimination because, on the facts of that case, there was none: applying the generous "discovery" accrual date, the court found the plaintiff's claim time-barred. See id. at 336-37, 257 Cal.Rptr. 211. The court, moreover, did not hold that the discovery rule it adopted in place of wrongful act would apply only to those section 911.2 actions in which discrimination resulted, but to all medical malpractice actions brought by minors under that statute. Accordingly, Torres properly is read as a facial invalidation of the "wrongful act" point of accrual. This is confirmed by the court's statement in general terms that "[b]y defining the actions of adults and minors to accrue differently, section 340.5 violates the minors' right to the law's equal protection." Id. at 334, 257 Cal.Rptr. 211.
 
 
 33
 Our task is to predict how the California Supreme Court would interpret section 340.5. See, e.g., Kelch v. Director, Nevada Dep't of Prisons, 10 F.3d 684, 686 (9th Cir.1993) (" 'In the absence of ... express guidance, we must interpret and apply the law as we predict the state's highest court would interpret and apply it.' " (quoting S & R Metals, Inc. v. C. Itoh & Co., 859 F.2d 814, 816 (9th Cir.1988) (citing Fiorito Bros. v. Fruehauf Corp., 747 F.2d 1309, 1314 (9th Cir.1984))); see also DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir.1992). In undertaking this analysis, "a federal court ... is not free to reject a state judicial rule of law merely because it has not received the state's highest court." Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir.1982). A court must ascertain state law " 'from all the available data,' " Westlands Water Dist. v. Amoco Chem Co., 953 F.2d 1109, 1114 (9th Cir.1991) (quoting West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)), and " '[a]n intermediate state appellate court decision is a 'datum' for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise,' " Estrella, 682 F.2d at 817 (quoting West, 311 U.S. at 237, 61 S.Ct. at 183).
 
 
 34
 In light of the strong statement by the California Supreme Court in Young that discrimination against minors is not related rationally to section 340.5's objective of "giv[ing] insurers greater certainty about their liability for any given period of coverage" or "any other ascertainable legislative goal," Young, 226 Cal.Rptr. at 557, 718 P.2d at 919, we cannot conclude there is any evidence that the California Supreme Court would disagree with the Torres court's equal protection analysis, or overturn its holding that section 340.5's disparity in accrual periods is invalid on its face.[9] Accordingly, we believe that the California courts, after Torres, would hold that section 340.5's "wrongful act" point of accrual is invalid and that some other point of accrual must be applied.
 
 
 35
 C. The California Courts would Read "Wrongful Act" as
 
 
 36
 "Injury" in light of Torres
 
 
 37
 Our holding that the California courts would not apply "wrongful act" leaves the question of how section 340.5 should operate with respect to minors. Appellant contends that Torres's application of the "discovery" rule to the case before it requires us to conclude that the California courts would read "wrongful act" as discovery in section 340.5's third sentence. Accordingly, Appellant argues that minors in California only need meet a three-year statute of limitations that runs from discovery.
 
 
 38
 We disagree that Torres requires this conclusion. First, although Torres held the wrongful act accrual provision invalid on its face, the court appeared to limit the applicability of the discovery rule to cases involving section 911.2. The court stated that: "With regard to when the Government Code section 911.2 time period begins, we hold that for purposes of the claims statutes, a minor's medical malpractice cause of action against a government defendant accrues when the minor's parent or guardian knew or should have known through the exercise of reasonable diligence that a negligent wrongful act of medical care caused the child's injuries." Torres, 209 Cal.App.3d at 335, 257 Cal.Rptr. 211. Moreover, nowhere in this section of its analysis did the court propose a rule of general applicability for all section 340.5 actions involving minors.
 
 
 39
 Second, adopting a three-year limitations period running from discovery appears foreclosed by the California Supreme Court's decision in Young. Both Torres and the case that it cited for the proposition that the discovery rule applied, Hernandez v. County of Los Angeles, 42 Cal.3d 1020, 232 Cal.Rptr. 519, 728 P.2d 1154 (1986) (a case that did not mention section 340.5), relied upon Whitfield v. Roth, 10 Cal.3d 874, 112 Cal.Rptr. 540, 519 P.2d 588 (1974). See Torres, 209 Cal.App.3d at 335, 257 Cal.Rptr. 211; Hernandez, 232 Cal.Rptr. at 521, 728 P.2d at 1156. Whitfield predated the 1975 revision of section 340.5 and applied the judicially-created common-law discovery rule, see Whitfield, 112 Cal.Rptr. at 548, 519 P.2d at 596 (discussing Wozniak v. Peninsula Hospital, 1 Cal.App.3d 716, 722, 82 Cal.Rptr. 84 (1969)). And, it was this very common-law discovery rule that Kite v. Campbell, 142 Cal.App.3d 793, 191 Cal.Rptr. 363 (1983), relied upon in creating for minors, in effect, a period to bring their claims that ran three years from discovery, see id. at 802-03, 191 Cal.Rptr. 363. The Young Court, however, in overruling Kite, unambiguously held that the common-law discovery rule could not be relied upon in determining when a minor's limitation period would be tolled. See Young, 226 Cal.Rptr. at 552-54, 718 P.2d at 915-16.
 
 
 40
 We think it unlikely that the California courts, confronted with the unconstitutionality of the "wrongful act" point of accrual, would resurrect Kite.[10] The court in Young reasoned that "[w]hile the [Kite court's] reading [of the statute] avoids the equal protection problem between minors and adults, the conclusion that the Legislature intended to restore the common law tolling provision which it had abolished five years previously is untenable." Young, 226 Cal.Rptr. at 552, 718 P.2d at 915. Clearly, the Young Court ascribed to the legislature an intent to do more than merely eliminate the rule that tolled minors' causes of action during their minority: a three-year period that ran, in effect, from "discovery" appeared inconsistent with the legislature's purpose of combatting " 'long tail' claims [that] had been a contributing cause of the perceived malpractice insurance crisis which precipitated" the adoption of the comprehensive statutory scheme that included the 1975 amendments to section 340.5. Id. Accordingly, Young demonstrates that it is unreasonable to suppose that the California legislature wanted minors to benefit from a de facto application of the common-law discovery rule under the guise of redefining the point of accrual. Consequently, we reject Appellant's suggested interpretation of the statute.
 
 
 41
 Red Cross offers a reconstruction of the statute that also appears contrary to the presumed intent of the California legislature. Seizing on the Young Court's statement that the first two sentences of section 340.5 "apply generally to all malpractice actions," Young, 226 Cal.Rptr. at 554, 718 P.2d at 916 (emphasis in original), and arguing that the legislature conditioned the benefits it accorded to minors in the third and fourth sentences of the statute on the wrongful act point of accrual, Red Cross maintains that if the "wrongful act" accrual provision in section 340.5 violates equal protection principles, then the third and fourth sentences of the statute should be struck down in their entirety and that adults and minors should be left on an equal footing: all actions then would be required to be brought within three years from injury or one year from discovery, subject to the tolling provisions in the statute's second sentence.[11]
 
 
 42
 Red Cross, in effect, raises an argument based on "severability" principles. In California, to be severable, " 'the invalid provision must be grammatically, functionally, and volitionally separable.' " Gerken v. Fair Political Practices Comm'n, 6 Cal.4th 707, 25 Cal.Rptr.2d 449, 453, 863 P.2d 694, 698 (1993) (quoting Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 258 Cal.Rptr. 161, 170, 771 P.2d 1247, 1256 (1989)). The third element is the most important. " 'The final determination depends on whether the remainder ... is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute....' " Id. (quoting Calfarm, 258 Cal.Rptr. at 170, 771 P.2d at 1256 (internal quotations omitted)); see also Briseno v. City of Santa Ana, 6 Cal.App.4th 1378, 1384, 8 Cal.Rptr.2d 486 (1992) (" '[T]he test of severability is whether the invalid parts of the statute can be severed from the otherwise valid parts without destroying the statutory scheme, or the utility of the remaining provisions.' " (quoting People v. Barksdale, 8 Cal.3d 320, 105 Cal.Rptr. 1, 11, 503 P.2d 257, 267 (1972))). Generally, "[i]nvalid provisions of a statute should be severed whenever possible to preserve the validity of the remainder of the statute." Briseno, 6 Cal.App.4th at 1384, 8 Cal.Rptr.2d 486 (citing Raven v. Deukmejian, 52 Cal.3d 336, 276 Cal.Rptr. 326, 801 P.2d 1077 (1990)).
 
 
 43
 Applying these principles, we reject the arguments advanced by Red Cross. First, we do not believe that invalidation of the wrongful act point of accrual requires striking down the other provisions favorable to minors in the third and fourth sentences of the statute on grounds of "functional" or "grammatical" severability. The fourth sentence can stand independent of the third sentence that contains the wrongful act accrual provision, and the third sentence of the statute can be retained by reading "wrongful act" as "injury" in that sentence instead of eliminating it altogether. Although this approach requires construing a statutory term to mean something other than what it says, cf. Metromedia, Inc. v. City of San Diego, 32 Cal.3d 180, 185 Cal.Rptr. 260, 264, 649 P.2d 902, 906 (1982) (stating that a court "cannot ... in the exercise of its power to interpret, rewrite the statute" (internal quotations omitted)), we believe that Torres indicates that this is a permissible method of reconstructing the statute under California law. The court in Torres did not invalidate section 911.2 after holding the wrongful act point of accrual unconstitutional but instead read into the statute, as it applied to minors, the discovery rule. See Torres, 209 Cal.App.3d at 335, 257 Cal.Rptr. 211. Therefore, accepting Red Cross's argument that a minor must, at a minimum, meet a statute running three years from injury, we believe it appropriate to achieve this result by reading "wrongful act" as "injury" in the statute's third sentence.
 
 
 44
 Finding that the principles of "grammatical" and "functional" severability do not to require the elimination of the third and fourth sentences of section 340.5, we further conclude that the legislature would have wanted the benefits accorded in those provisions to remain. Cf. Metromedia, 185 Cal.Rptr. at 266, 649 P.2d at 908 (holding that "even if the statute following severability is not what the enacting body originally intended, the courts can sustain the statute if severance is mechanically feasible and the legislative body would have preferred such an outcome to total invalidation").
 
 
 45
 Red Cross argues that the remainder of the third and fourth sentences were dependent on the wrongful act accrual provision in the sense that, had the California legislature selected a different point of accrual, it would not have enacted those extra protections. We find this argument unpersuasive. The third sentence of the statute permits minors whose actions accrue under the age of six at least until the age of eight to bring an action. But if a different accrual period, such as "injury," is substituted for "wrongful act," minors receive no additional protection. By definition, if a minor experiences "injury" before the age of six, a wrongful act has taken place. This provision, therefore, appears to operate independently of the point of accrual. Similarly, the statute's fourth sentence, which tolls the limitation period applicable to minors for fraud or collusion by their parent or guardian and a health care provider or insurer, is aimed at preventing minors' loss of their rights because of the action of others. Because it assumes that minors cannot protect themselves from such conduct, its purpose is served no matter when a minor's action accrues. We therefore cannot conclude that the legislature conditioned this provision on any particular point of accrual.
 
 
 46
 A more difficult question is raised concerning whether the California legislature's decision to apply only a three-year limitation period for minors, and exclude operation of the one-year statute that runs from discovery, was conditioned, as Red Cross insists, on the wrongful act point of accrual. The decision of the California Supreme Court that held the one-year provision inapplicable to minors, Steketee, appears to lend support to Red Cross's position. The court in Steketee reasoned that, because "the Legislature drastically curtailed the time within which a minor may bring an action when it specified the date of the wrongful act rather than the injury as the beginning of the three-year statute of limitations," the court could not impute an intent "to further limit the right of an injured minor to a judicial remedy by imposing additional restrictions intended for adults." Steketee, 210 Cal.Rptr. at 786, 694 P.2d at 1158 (emphasis added). Despite this passage, we reject Red Cross's contention.
 
 
 47
 First, Steketee also relied on California's "strong public policy [of] protecting minors against the loss of their rights due to the operation of statutes of limitations." Id. (citing Williams v. Los Angeles Metropolitan Transit Authority, 68 Cal.2d 599, 68 Cal.Rptr. 297, 440 P.2d 497 (1968)). It is presumed that the legislature enacts laws with this principle in mind. See Young, 226 Cal.Rptr. at 555, 718 P.2d at 917 (" 'It is well settled that ... both the Legislature and the courts seek to protect the rights of minors.' " (quoting Wozniak, 1 Cal.App.3d at 723, 82 Cal.Rptr. 84)). We further note that the California legislature, historically, has granted minors more generous limitation periods than similarly situated adults, and that these benefits have not been conditioned on minors' suffering detriments in some other circumstances. See, e.g., Cal.Gov't Code Sec. 911.4(b) (Deering 1982) (tolling a limitation period for minors to bring an application for a late claim against a public entity when the minor is mentally incapacitated and lacks an adult representative); Cal.Civ.Proc.Code Sec. 352(a) (Deering 1991) (tolling the general one-year limitations for period for minors during the entire period of their minority). In light of this policy, we do not find compelling Red Cross's argument that the legislature necessarily would have intended the one-year limitation period to apply to minors if the injury point of accrual had been chosen instead. Indeed, this background presumption that the legislature seeks to protect minors points decisively in the opposite direction. Accordingly, we do not believe that the California courts would revisit Steketee merely because the "wrongful act" point of accrual no longer can be applied.
 
 
 48
 Second, applying the one-year limitation period to minors would be inconsistent with a statutory structure that preserves for minors whose causes of action accrue under the age of six the right, at a minimum, to bring an action until the age of eight. Under the California Supreme Court's decision in Young, the general provisions in the first two sentences of the statute only apply to the extent that those provisions in the third and fourth sentences are not "truly inconsistent." Young, 226 Cal.Rptr. at 554, 718 P.2d at 916. If a minor whose cause of action accrues under the age of six has, at a minimum, until the age of eight to commence an action, a true inconsistency would remain between the one-year limitation period and this provision. Cf. Young, 226 Cal.Rptr. at 554-55 n. 10, 718 P.2d at 916-17 n. 10. Moreover, the third sentence of the statute can be read in a coherent manner only if a different accrual provision is substituted for "wrongful act." If the statute is reconstituted in this manner, Young indicates that a true inconsistency also would remain between the structure of the third sentence, which provides for only one limitation period for minors that runs three years, and the application of the one-year limitation period. See id.
 
 
 49
 We are left, then, with the reading urged by Appellee Children's Hospital: that "wrongful act" should be read as "injury" in the third sentence of section 340.5 and that minors are not subject to the limitation periods provided in the statute's first sentence. We agree. Reading "wrongful act" as "injury" in the statute's third sentence is a more plausible view of how the legislature would balance the three competing objectives of ensuring the statute's constitutionality, the legislature's presumed purpose of "seek[ing] to protect the rights of minors," Young, 226 Cal.Rptr. at 555, 718 P.2d at 917 (internal quotations omitted), and the California legislature's purpose in MICRA of ameliorating the effects of "long tail" actions that the discovery rule engendered, than the two alternative interpretations considered above. Cf. Larcher, 135 Cal.Rptr. at 80, 557 P.2d at 512 (contending that "section 340.5 [does not] evince[ ] [the] single-minded purpose" of "extinguish[ing] a large number of claims before they accrue" but instead was "a compromise between concern over the extended exposure of medical practitioners to medical malpractice liability and a desire not to bar potentially worthy plaintiffs from court before they have a fair opportunity to bring suit").
 
 
 50
 Under an "injury" point of accrual, minors would receive at least as much protection as adults, thus solving the equal protection problems identified in Young and Steketee and addressed in Torres. Moreover, requiring minors to bring their actions within three years from "injury" still constitutes a significant curtailment of the preexisting rule that tolled the operation of the common-law discovery rule during a person's minority. In addition, it is less generous than the three-year from discovery rule rejected by the California Supreme Court in Young. The injury point of accrual also advances substantially the legislature's purpose of "giv[ing] insurers greater certainty about their liability for any given period of coverage." Young, 226 Cal.Rptr. at 557, 718 P.2d at 919. Finally, as discussed above, not subjecting minors to the additional one-year period that runs from discovery accords with the strong public policy of protecting minors that we presume that the legislature attempts to further.
 
 
 51
 Accordingly, we conclude that reading "wrongful act" in the third sentence of section 340.5 as "injury" is the construction of the statute that the California courts most likely would adopt after Torres.
 
 
 52
 III. Did Appellant Meet His Summary Judgment Burden?
 
 
 53
 Applying the interpretation of section 340.5 we adopt above, it is clear that, if the August 18, 1988, blood test that revealed Appellant's infection with the HIV virus is deemed the point of "injury," then Appellant's complaint was filed in a timely manner. Appellant filed his notice to sue pursuant to section 364 on June 25, 1991, within three years of that date, and both Appellees concede that, under Woods v. Young, 53 Cal.3d 315, 279 Cal.Rptr. 613, 618-19, 807 P.2d 455, 460-61 (1991), the period for filing the action was tolled 90 days by the timely filing of the section 364 notice. Because the filing of the complaint on October 7, 1991, was within 90 days of August 18, 1991, the complaint, under the assumption that "injury" occurred on this date, was timely.[12]
 
 
 54
 Appellee Children's Hospital, however, disputes this assumption and asserts that summary judgment nonetheless is appropriate because Appellant failed to carry his summary judgment burden of presenting evidence on at what point "injury," defined as "the point at which 'appreciable harm' was first manifested" from the HIV infection, Brown v. Bleiberg, 32 Cal.3d 426, 186 Cal.Rptr. 228, 233 n. 8, 651 P.2d 815, 820 n. 8 (1982), occurred. We assume arguendo that the California courts would adopt the definition of injury Appellee advances, and we agree that Appellant ordinarily would have the burden at summary judgment of presenting evidence on this issue, see Estrella v. Brandt, 682 F.2d 814, 819 (9th Cir.1982) (placing the burden to introduce facts relevant to "injury" at summary judgment on the plaintiff in an action involving section 340.5). Nonetheless, we reject Children's Hospital contention that summary judgment can be upheld on this basis.
 
 
 55
 Although the theory advanced by Children's Hospital was not urged below, "[i]t is an established principle that an appellate court may affirm a lower court's grant of summary judgment on any basis supported by the record even if the lower court applied the incorrect legal standard." USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1279 (9th Cir.1994) (separate opinion of D.W. Nelson, J.) (citing cases). A party can only be held to have failed to satisfy its duty under Celotex to "designate 'specific facts showing that there is a genuine issue for trial,' " Celotex v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.Pro. 56(e)), however, if the moving party placed the nonmoving party on proper notice. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." Id. at 323, 106 S.Ct. at 2552 (emphasis added); see also USA Petroleum, 13 F.3d at 1279, 1283 & n. 8 (citing cases); cf. Fountain v. Filson, 336 U.S. 681, 682-83, 69 S.Ct. 754, 755, 93 L.Ed. 971 (1949) (holding that an appellate court can grant summary judgment sua sponte against a party as long as that party had a full and fair opportunity to contest the issue).
 
 
 56
 In this case, nothing in either Red Cross's summary judgment motion or Children's Hospital's motion to dismiss, or the additional briefs filed by either party, put Appellant on notice that he was required to adduce facts that might demonstrate that no "manifestation" of an HIV-related infection occurred prior to the August 18, 1988 blood test. In its summary judgment papers, Red Cross, in addition to arguing that the limitations period expired on Appellant's eighth birthday, and that none of the tolling provisions applied, contended briefly that, if the cause of action accrued at injury, both wrongful act and injury occurred at the time of the 1983 blood transfusion. See Motion for Summary Judgment at 1; Reply Memorandum of American Red Cross at 2 n. 2.[13] Children's Hospital advanced two different theories: first, like Red Cross, it contended that Appellant's action was barred because the alleged wrongful act occurred in 1983, and therefore, that the limitation period ran when Appellant turned eight. Alternatively, Children's Hospital, relying on an abandoned interpretation of section 364, see Brief for Appellee Children's Hospital at 14 n. 7, argued that "[e]ven assuming arguendo, that plaintiff would have three years within which to file after the date of discovery, the filing of the Complaint would still be late since it was filed more than three years after the date of the alleged discovery," Appellee Children Hospital's Motion to Dismiss at 10.
 
 
 57
 At no time did either Red Cross or Children's Hospital contend that Appellant failed to submit evidence of "injury" as Children's Hospital now contends that it must be defined. It is not surprising, therefore, that Appellant failed to present evidence on this question. We note, moreover, that Appellant's section 364 notice to sue, relied upon by both Appellees below, indicates that such evidence might exist, for Appellant's counsel stated that "[t]he HIV infection in [the minor] was not discovered until on or about August 17, 1988." Accordingly, because Appellant was not on proper notice, we cannot uphold the district court's grant of summary judgment on the basis urged by Children's Hospital.
 
 Conclusion
 
 58
 We hold that, because the "wrongful act" accrual date for minors violates equal protection principles, a minor's cause of action accrues at the date of "injury" as defined by the California courts, and that minors are subject only to a three-year limitation period. We further hold that the grant of summary judgment must be reversed. Accordingly, the judgment of the district court is REVERSED, and the cause REMANDED for further proceedings consistent with this opinion.
 
 
 59
 Reversed and Remanded.
 
 
 
 [1]
 Section 364 provides, in pertinent part:
 (a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.
 (d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for commencement of the action shall be extended 90 days from the service of the notice.
 Cal.Civ.Proc.Code Sec. 364 (Deering 1991).
 
 
 [2]
 Appellant also alleged that the hospital, as well as several unnamed employees, acted negligently "in other respects," and that the negligent transfusion of the HIV-tainted blood was undertaken without the informed consent of Appellant's parents
 
 
 [3]
 For the text of Sec. 340.5, see infra pp. 1524-25
 
 
 [4]
 Children's Hospital's motion to dismiss was denied as moot
 
 
 [5]
 Presumably, the district court accepted Appellees' argument that, based on the third sentence of Sec. 340.5, the statute ran on Appellant's eighth birthday in 1987
 
 
 [6]
 Both the Red Cross and Children's Hospital also disagree with Appellant's contention that the "foreign body" exception applies. Because we find that summary judgment cannot be upheld based on the interpretation of the statute we adopt below, that minors must bring a medical malpractice action within three years of injury, we do not reach the question of whether the "foreign body" exception applies in this case or whether the HIV virus constitutes a "foreign body" within the meaning of that provision
 
 
 [7]
 The 1970 version of Sec. 340.5 differed somewhat from the present version in that it contained a more generous tolling provision and in that the "outside" limitation period running from "injury" originally was set at four years. See Larcher, 135 Cal.Rptr. at 76 n. 1, 557 P.2d at 508 n. 1. Moreover, as discussed below, the 1970 version of the statute did not include provisions applicable to minors
 
 
 [8]
 The statute since has been amended to provide a longer period within which a claim may be filed. See Cal.Gov't Code Sec. 911.2 (Deering Supp.1994)
 
 
 [9]
 We note that Torres did not specify whether it relied on the Equal Protection Clause of the Fourteenth Amendment or the Equal Protection Clause of the California Constitution. This easily is explained, however, as resulting from the fact that the California courts read the rationality review component the Equal Protection Clause contained in Article I, section 7, of the California Constitution as "coextensive with its federal counterpart." Department of Developmental Servs. v. Ladd, 224 Cal.App.3d 128, 129, 273 Cal.Rptr. 485 (1990); see also Young, 226 Cal.Rptr. at 556, 718 P.2d at 918 (relying upon the Fourteenth Amendment in interpreting the California constitution); Department of Mental Hygiene v. Kirchner, 62 Cal.2d 586, 43 Cal.Rptr. 329, 330, 400 P.2d 321, 322 (1965); Smith v. Board of Medical Quality Assurance, 202 Cal.App.3d 316, 324, 248 Cal.Rptr. 704 (1988)
 When a state relies on a federal standard in interpreting its own constitution, the Supreme Court will find a federal question presented. See, e.g., Delaware v. Prouse, 440 U.S. 648, 652-53, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 568, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977); cf. Michigan v. Long, 463 U.S. 1032, 1042-44 & n. 8, 103 S.Ct. 3469, 3477-78 & n. 8, 77 L.Ed.2d 1201 (1983) (noting the holdings of Prouse and Zacchini and finding jurisdiction when the state did not through a "plain statement" clearly indicate its reliance on an independent state ground). See generally Paul M. Bator, Daniel J. Meltzer, Paul J. Mishkin & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 559-63 (3d ed. 1988). The reason for this rule, in part, is to ensure that the Supreme Court remains able to function as the final expositor on questions of federal law. See, e.g., Minnesota v. National Tea Co., 309 U.S. 551, 557, 60 S.Ct. 676, 679, 84 L.Ed. 920 (1940) ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions. But it is equally important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by this Court of the validity under the federal constitution of state action.").
 Similar values are at stake when a federal court of appeals is called upon to accept as conclusive a state's application of federal law in situations when a federal court otherwise possesses jurisdiction and full faith and credit, as demanded by 28 U.S.C. Sec. 1738, does not apply. Cf. Dubinka v. Judges of the Superior Court, 23 F.3d 218, 220-23 (9th Cir.1994) (finding a challenge under the Fifth, Sixth, and Fourteenth Amendments to California's Proposition 115 not barred by the Rooker Feldman doctrine, see District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 1314-16, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), even though the California courts previously had upheld Proposition 115 against identical constitutional attacks). Moreover, in light of Prouse and Zacchini, we do not believe our role is diminished when a state does not expressly apply federal law in assessing the constitutionality of its enactments but instead has incorporated federal law into its own constitutional standard.
 We therefore assume that we have a duty to verify that the constitutional analysis undertaken in Torres was correct. Here, we agree with the Torres court's conclusion that discrimination against minors bears no rational relationship to Sec. 340.5's statutory objectives.
 
 
 [10]
 Although both Kite and Young discussed the discovery rule as a "tolling" rule and not a point of "accrual," see Young, 226 Cal.Rptr. at 552, 718 P.2d at 914-15; Kite, 142 Cal.App.3d at 802-03, 191 Cal.Rptr. 363, this is a distinction without difference. The rule, as discussed above, was created by the courts to fill the void left by the failure of the legislature to include a triggering event in Sec. 340(3). Therefore, courts conceptualized the rule both as a "tolling" rule and as a point of accrual. Compare, e.g., Sanchez, 132 Cal.Rptr. at 660-61, 553 P.2d at 1132-33 (characterizing the rule of Whitfield as a "judicially created tolling rule" but also stating that under the common-law rule "it had been clear that the limitation period did not commence" until discovery (emphasis added)) and Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 660-61, 751 P.2d 923, 926-27 (1988) (relying upon Lambert v. McKenzie, 135 Cal. 100, 67 P. 6 (1901), for the proposition that the common-law accrual point is "injury" and characterizing the "discovery rule" as a tolling rule) with Hernandez, 232 Cal.Rptr. at 520, 728 P.2d at 1156 (characterizing the rule of Whitfield as a rule of accrual)
 
 
 [11]
 Red Cross also maintains that the provisions that benefit minors themselves violate equal protection principles. This argument is without merit. The legislature has a rational basis to advantage "the most vulnerable subclass of malpractice plaintiffs." Young, 226 Cal.Rptr. at 555, 718 P.2d at 917. Cf. Kite, 142 Cal.App.3d at 799, 191 Cal.Rptr. 363 (noting that statutes that "favor" minors "implement the interest of the state in the well-being of youth" (citing Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (emphasis in original))
 
 
 [12]
 Although Woods only addressed Sec. 340.5's one-year limitation provision, see Woods, 279 Cal.Rptr. at 614 n. 1, 807 P.2d at 456 n. 1, its reasoning is applicable equally to the three-year provisions
 
 
 [13]
 Confusingly, based on a reading of Sec. 364 that it now rejects, see Brief for Appellee Red Cross at 3 n. 4, Red Cross also asserted that "plaintiff's claim is also barred using a date-of-injury or date-of-discovery trigger, because plaintiff alleges ... that he 'discovered the negligence of defendants, and each of them, on or about August 18, 1988.' " Motion for Summary Judgment at 9-10 (emphasis added). In light of the definition of injury given on page 1 of the summary judgment motion, however, it appears that Red Cross was referring only to discovery. Additionally, the uncontroverted fact submitted by both Appellees that "[n]o later than August 18, 1988, plaintiff S.S. discovered the alleged negligence of the American Red Cross," similarly refers only to discovery and not injury. Accordingly, it could not have put Appellant on notice to present evidence of when the first manifestations of an HIV-related infection occurred